Emily S. Madden (WSB # 7-6272)
THE SPENCE LAW FIRM, LLC
232 East 2nd Street, Suite 101
Casper, Wyoming 82601
(307) 337-3833 / (307) 733-5248 (fax)
madden@spencelawyers.com
*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AMY LEISE, *as the Personal Representative of the Estate of Donald E. Ruch, deceased*,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil No. _____ |

# COMPLAINT

Plaintiff, Amy Leise, as the Personal Representative of the Estate of Donald Ruch, by and through counsel, Emily S. Madden of THE SPENCE LAW FIRM, LLC, pleads and alleges her cause of action against Defendant as follows:

## I.    INTRODUCTION

1. This action is brought against Defendant, the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* and 28 U.S.C. § 1346(b) for money damages on behalf of Donald E. Ruch's Estate for the personal injuries suffered by Mr. Ruch prior to his death and on behalf of his next of kin for their injuries as a result of Mr. Ruch's wrongful death. Mr. Ruch's pre-death personal injuries and ultimate death were proximately caused by the negligent and wrongful acts, errors, and omissions of federal officers and/or employees while acting within the scope of their employment under

circumstances where the United States, if a private person, would be liable under Nebraska law.

## II. PARTIES

**Plaintiff**

2. Plaintiff Amy Leise is a Nebraska citizen residing in Douglas County, Nebraska.

3. Decedent, Donald E. Ruch, was a decorated war veteran who was at all material times receiving regular medical treatment at the Omaha Veterans' Administration Medical Center–VA Nebraska-Western Iowa Health Care System in Omaha, Nebraska ("Omaha VA").

4. On October 23, 2019, Mr. Ruch suffered serious personal injuries when his wheelchair rolled out the back of an open, unattended, and unsecured Veterans Transportation Service van in which he was a passenger.

5. Mr. Ruch died on October 24, 2019, from blunt force trauma to the head as a result of his fall.

6. Mr. Ruch was 73 years old at the time of his death.

7. Mr. Ruch's pre-death personal injuries and ultimate death were directly and proximately caused by the negligent acts and omissions of federal officers and/or employees in the course and scope of their federal employment with the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs.

8. At the time of his death, Mr. Ruch was a Nebraska citizen residing in Douglas County, Nebraska.

9. On May 20, 2021, the Probate Division of the Douglas County Court appointed Plaintiff Amy Leise as the Personal Representative of the Estate of Donald E. Ruch. The Letters of Personal Representative are attached hereto as **Exhibit A**.

10. Plaintiff brings this action on behalf of Mr. Ruch's Estate for his pre-death personal injuries, including but not limited to his physical, mental, and emotional pain and suffering, as well as recoverable pecuniary damages, including but not limited to medical, funeral, and burial expenses incurred by the Estate.

11. Plaintiff also brings this action on behalf of all eligible and participating next of kin for their damages suffered as a result of Mr. Ruch's wrongful death.

**Defendant**

12. The Veterans Health Administration operates medical centers throughout the United States, including the Omaha VA.

13. The Veterans Health Administration is a subdivision of the United States Department of Veterans Affairs. *See* 38 U.S.C. § 301(c)(2).

14. The Department of Veterans Affairs is an executive department of Defendant United States of America. *See* 38 U.S.C. § 301(a).

15. Defendant United States of America is the proper party-defendant under the Federal Tort Claims Act. 28 U.S.C. § 2679(a).

### III. JURISDICTION AND VENUE

16. This Court is vested with exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1346(b)(1).

17. This Court has personal jurisdiction over Defendant because the incidents that gives rise to this action occurred in the State and District of Nebraska.

18. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the State and District of Nebraska.

19. Venue is also proper in this Court under 28 U.S.C. § 1402(b) because this is a civil tort action against the United States, Plaintiff resides in the State and District of Nebraska, and the acts or omissions complained of occurred in the State and District of Nebraska.

20. Plaintiff timely filed her federal administrative tort claim pursuant to 28 U.S.C. § 2401(b) by presenting a Form 95 and supplemental written notice of her claims with the Department of Veterans Affairs, Office of General Counsel–Torts Law Group at 810 Vermont Avenue NW in Washington, D.C.

21. Plaintiff's administrative tort claim was received by the Department of Veterans Affairs on October 13, 2021. A copy of a U.S.P.S. Certified Mail Receipt and accompanying proof of receipt is attached hereto as **Exhibit B.**

22. The Department of Veterans Affairs is the appropriate federal agency in which to present an administrative claim, and Plaintiff's Form 95 and supplemental written notice was presented to it before this action was initiated and within two years of the date of the occurrence complained of as required under 28 U.S.C. §§ 2401(b).

23. Under 28 U.S.C. § 2675, an agency's failure "to make final disposition of a claim within six months after it is filed shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for purposes" of the Federal Tort Claims Act.

24. As of April 13 2022, the Department of Veterans Affairs has failed to make final disposition of Plaintiff's claim.

25. Plaintiff deems the Department of Veterans Affairs' failure to make a final disposition of her claim within six months a final denial of the claim under 28 U.S.C. § 2675(a).

26. Therefore, this action is timely filed in this Court under 28 U.S.C. § 2401.

## IV. GENERAL STATEMENT OF FACTS

**Background**

27. Mr. Ruch was an Omaha native who served in the United States Army's alpha company infantry unit during the Vietnam War.

28. Mr. Ruch was awarded numerous medals for his heroic efforts during the War as an infantry radioman and squad leader, including the Army Commendation Medal, the Bronze Star, and the National Defense Service Medal.

29. As of October 2019, Mr. Ruch was paraplegic as a result of a previous ruptured thoracic aneurism with loss of neurologic function below T8.

30. As such, Mr. Ruch was a wheelchair user.

31. As a veteran, Mr. Ruch received medical treatment at the Omaha VA.

32. At all relevant times, the Omaha VA offered its veterans the Veterans Transportation Service, which is and was at all material times a federally funded program that provides eligible veterans with door-to-door service to and from any VA scheduled medical appointment.

33. The Veterans Transportation Service is a federally funded program "designed to ensure that all qualifying Veterans have access to care through convenient, safe, and reliable transportation." *Department of Human Assistance*, TRANSPORTATION FOR

VETERANS, https://ha.saccounty.gov/benefits/VeteransServices/Pages/Transportation.aspx (last visited Apr. 6, 2022).

34. Mr. Ruch was eligible for and often used the Veterans Transportation Service.

35. Because of his wheelchair use, Mr. Ruch was transported via the Veterans Transportation Service in a wheelchair accessible van that was either owned or leased by the Omaha VA.

**The Incident**

36. On October 23, 2019, Mr. Ruch had a regularly scheduled medical appointment at the Omaha VA.

37. In the early afternoon, Mr. Ruch was picked up from his residence at the Good Samaritan Nursing Home in Omaha by a Veterans Transportation Service van.

38. Mr. Ruch, along with another eligible veteran and wheelchair user, were transported to the Omaha VA together that day.

39. Mr. Ruch was loaded in the van first and faced the front of the vehicle; the additional passenger was loaded after and behind Mr. Ruch.

40. Upon arriving at the Omaha VA around 2:00 p.m., the driver—who was a federal employee—parked the van in the front circle outside the West entrance to the VA hospital.[1]

---

[1] The name of the driver and other relevant, federal officers and/or employees are unknown to Plaintiff because they were redacted from pre-litigation documents pursuant to 5 U.S.C. §§ 552(b)(6), 552(b)(7)(c). Upon information and belief, Defendant is aware of the witnesses' identities.

41. The driver then untied or otherwise unsecured both passengers' wheelchairs, including Mr. Ruch's.

42. The driver then opened the rear door to the van, locked it open, and assisted the other veteran out of the van via the rear wheelchair lift.

43. The driver immediately proceeded to take the other veteran into the Omaha VA facility.

44. Consequently, the driver left Mr. Ruch in the van unsecured and unattended with the rear door open and the ramp lowered to the ground.

45. This caused Mr. Ruch's wheelchair to roll out of the back of the van and fall on the ground with Mr. Ruch strapped in it.

46. Mr. Ruch's wheelchair weighed approximately 450 pounds.

47. The weight of his wheelchair rapidly pulled Mr. Ruch down and out of the van—his head hit the ground violently.

48. Two people walking nearby heard a "loud bang" and turned back to see Mr. Ruch lying on the ground.

49. The driver eventually came out of the facility to see Mr. Ruch in that same position.

50. By the time the driver exited the facility, a person was already with Mr. Ruch, and this person asked the driver to go back into the hospital and call the VA's Rapid Response Team ("RRT").

51. The driver dialed "3333" at the information desk, which is the number to reach the Omaha VA's emergency response team, but the Operator stated that 911 for non-

VA responders needed to be dispatched because of the "VA policy that RRT's are not to be called for the exterior of the hospital."

52. The Operator transferred the caller to the VA Police dispatch who reaffirmed that non-VA 911 needed to be called.

53. Non-VA emergency responders arrived at the scene, including Omaha Fire Engine Number 34 and EMS paramedics.

54. The VA Police eventually responded to the scene, but non-VA 911 responders were already there.

55. Mr. Ruch was initially conscious and able to provide someone with Plaintiff's contact information.

56. Mr. Ruch complained that the VA "wasn't helping him."

57. Mr. Ruch was visibly bleeding from his right forearm and left elbow.

58. Paramedics got Mr. Ruch out of his wheelchair, onto a stretcher, and into a cervical collar before transporting him to the Emergency Department at the University of Nebraska Medical Center for further treatment.

**Mr. Ruch's post-incident medical treatment and death**

59. Mr. Ruch arrived at the Emergency Department around 3:09 p.m.

60. Mr. Ruch was alert but disoriented and displayed an altered mental state.

61. After an initial triage, Mr. Ruch began experiencing seizure-like symptoms.

62. Hospital staff attempted to obtain a CT scan of Mr. Ruch's head, but they were unable to get a read because of his uncontrollable movements from the seizure-like symptoms.

63. Mr. Ruch later became more somnolent, but he stopped responding to verbal stimuli and was eventually intubated.

64. Once intubated, staff performed a repeat CT scan of his head which showed an expanding subdural hematoma.

65. Mr. Ruch's condition steadily declined thereafter; his Glasgow Coma Scale score was a 3, which indicated a severe brain injury.[2]

66. Mr. Ruch was placed on life support around 5:28 p.m.

67. Mr. Ruch's treating physicians told the family that Mr. Ruch would never cognitively recover and that there were no likely positive outcomes.

68. After this discussion, the family decided to remove Mr. Ruch from life support.

69. Mr. Ruch was pronounced dead at 5:47 a.m. the next morning, on October 24, 2019.

70. The coroner determined Mr. Ruch's cause of death to be blunt force trauma to the head.

71. The blunt force trauma to Mr. Ruch's head was a direct and proximate result of his fall which was directly and proximately caused by the negligent and otherwise culpable acts and omissions of the driver and other federal employees of the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs.

---

[2] The Glasgow Coma Scale (GCS) is the most common scoring system used to describe the level of consciousness in a person following a traumatic brain injury. The GCS measures eye opening, verbal response, and motor response. A GCS score of 8 or less is "severe"; 9–12, "moderate"; and 13–15, "mild."

**The negligent acts and omissions**

72. In 2019, the Department of Veterans Affairs issued Directive 1695 which provides policies, procedures, and standards of care for the Veterans Transportation Service pursuant to [38 U.S.C. § 111A](38 U.S.C. § 111A) and [38 C.F.R. § 70.2](38 C.F.R. § 70.2).

73. Directive 1695 was in effect at all material times.

74. At all material times, Directive 1695 required all Veterans Transportation Service drivers to be trained and competent in appropriate patient loading procedures, wheelchair lift operations, and wheelchair tie down procedures.

75. At all material times, Directive 1695 required all Veterans Transportation Service drivers to enforce the use of safety belts or other restraints by all vehicle occupants.

76. At all material times, Directive 1695 included an express statement that drivers should never leave an occupant unattended in a vehicle.

77. At all material times, the driver of the Veterans Transportation Service van was a federal employee employed by either the Veteran Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs.

78. At all material times, the driver was acting within the course and scope of his federal employment.

79. The driver clearly violated Directive 1695 when he untied or otherwise unsecured Mr. Ruch's wheelchair from the van upon parking, and when he left Mr. Ruch unattended and unsecured with the van's door open and the lift lowered.

80. Moreover, Directive 1695 required all VA facilities to develop and implement safe transportation management programs and procedures for purposes of the Veterans Transportation Services.

81. Upon information and belief, the Omaha VA did not have a standard curriculum or training for Veterans Transportation Service drivers.

82. Even if Directive 1695 did not require such actions or policies and procedures, industry standards governing wheelchair transportation and assistance provide the same standards of care.

83. The driver and the Omaha VA clearly violated Directive 1695 and industry standards in these respects.

**The Omaha VA's post-death investigation, determinations, and changes**

84. After Mr. Ruch's death, David Williams, the Chief of Staff for the Omaha VA, determined that local standards would be developed.

85. Mr. Williams's determination indicates that no local standards were developed, let alone implemented, at the time of Mr. Ruch's fall.

86. Indeed, it was not until Mr. Ruch's death that the Omaha VA took steps to ensure that "if patients need assistance getting into a facility while other Veterans are on the van, the driver will arrange for a facility escort to assist the patient–NOT the driver."

87. After Mr. Ruch's death, Mr. Williams acknowledged that "the vans used to transport veterans who use wheelchairs lacked basic, common sense safety mechanisms, including an automatic barrier when the loading ramp is down[.]"

88. Mr. Williams also acknowledged the Omaha VA's Veteran Transportation Service lacked a proper or adequate "[v]eteran selection regarding who require[d] an escort

into the facility and who [did] not," which "increase[d] the risk that veterans might get confused" and seriously injured.

89. The Omaha VA also determined it needed to improve its on-campus response measures, including training key staff members to effectively triage and stabilize patients pending community paramedic response.

90. The Omaha VA admitted it did not organize the accident site or seek eye-witness accounts like it should have.

91. The Omaha VA admitted these subsequent remedial measures were taken because "Veterans deserve a well-coordinated response to emergencies occurring on our campus."

## V. FIRST CAUSE OF ACTION: NEGLIGENCE RESULTING IN PRE-DEATH, CONSCIOUS PAIN AND SUFFERING
*Brought on behalf of Donald E. Ruch's Estate*

92. At all material times, the driver of the Veterans Transportation Service van was a federal employee employed by the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs.

93. At all material times, the driver's negligent acts and omissions took place while he/she was acting within the scope of his/her office or employment, under circumstances where the United States, if a private person, would be liable under Nebraska law.

94. As the driver's employer, the United States is liable for the negligent acts or omissions of the driver under the doctrine of respondeat superior.

95. At all material times, the driver was engaged in a special relationship as a common carrier with passengers who were veteran occupants, including Mr. Ruch.

96. In addition to the common carrier-passenger relationship, the driver entered into a custodial relationship by voluntarily taking custody of passengers for whom he/she had a superior ability to protect, and such custodial passengers included Mr. Ruch.

97. These special relationships imposed upon the driver a duty of reasonable care with regard to risks that arise within the scope of those special relationships.

98. This duty of care includes a duty to exercise reasonable care under the circumstances and a duty not to create a risk of harm.

99. Irrespective of these special relationships, the driver owed Mr. Ruch a general duty of care under the common law to exercise reasonable care under the circumstances and to not create a risk of harm to passengers utilizing its Veteran Transportation Service, including Mr. Ruch.

100. The driver breached his/her duty of care to Mr. Ruch in one or more of the following ways:

   a. Negligently failing to abide by or ensure compliance with existing policies and procedures relating to the transportation of wheelchair users;
   b. Negligently failing to ensure compliance with Directive 1695;
   c. Negligently failing to comply with Directive 1695;
   d. Negligently failing to use vans equipped with safety mechanisms, including but not limited to an automatic barrier when the loading ramp is down;
   e. Negligently failing to keep Mr. Ruch secured in the van while unloading and assisting another passenger;
   f. Negligently failing to supervise Mr. Ruch while he was in the van;
   g. Negligently escorting another passenger into the facility while an unattended and unsecured passenger remained in the van; and/or
   h. Negligently failing to otherwise act with reasonable care under the circumstances and/or negligently creating a risk of harm to Mr. Ruch.

101. The driver's negligent acts or omissions caused Mr. Ruch to fall from the van and hit his head, which further caused Mr. Ruch to suffer pre-death pain and suffering and for his Estate to incur medical, funeral, and burial expenses for his treatment at the University of Nebraska Medical Center for which the United States is liable.

102. In addition to the duty of care owed to Mr. Ruch by the driver, other officers and/or employees of the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs owed Mr. Ruch a duty to act with reasonable care under the circumstances and to not create a risk of harm to him.

103. Other employees and/or officers of the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs breached the applicable duty of care to Mr. Ruch in one or more of the following ways:

> a. Negligently failing to develop, adopt, implement, or enforce internal or local standards, policies, and procedures to ensure the safe transportation of wheelchair users;
> b. Negligently failing to develop, adopt, implement, or enforce policies or procedures to safely attend to multiple vehicle occupants;
> c. Negligently failing to abide by or ensure compliance with existing policies and procedures relating to the transportation of wheelchair users;
> d. Negligently failing to ensure compliance with Directive 1695;
> e. Negligently failing to comply with Directive 1695;
> f. Negligently failing to use vans equipped with safety mechanisms, including but not limited to an automatic barrier when the loading ramp is down;
> g. Negligently failing to train and/or supervise Veterans Transportation Service drivers, including the driver of the van from which Mr. Ruch fell;
> h. Negligently failing to organize the accident site;
> i. Negligently failing to seek eye-witness accounts;
> j. Negligently failing to train staff to triage and stabilize patients pending community paramedic response;

k. Negligently failing to triage and stabilize patients pending community paramedic response;

l. Negligently failing to train, ensure, or provide a well-coordinated response to emergencies occurring on its campus; and/or

m. Negligently failing to otherwise act reasonably under all the circumstances.

104. The violations of applicable administrative rules and regulations, such as Directive 1695 and/or other public or private safety regulations, constitute negligence per se.

105. The negligent acts or omissions of the officers and/or employees of the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs caused Mr. Ruch to fall from the van and hit his head, which further caused Mr. Ruch to suffer pre-death pain and suffering and incur pecuniary expenses for his subsequent medical treatment, funeral, and burial for which the United States is liable.

106. Specifically, Defendant is liable to the Estate of Donald E. Ruch for following damages:

a. Mr. Ruch's pre-death physical pain and suffering in an amount to be proven at trial;

b. Mr. Ruch's pre-death emotional distress and mental anguish in an amount to be proven at trial;

c. Mr. Ruch's pre-death fear and apprehension of impending death in an amount to be proven at trial;

d. The medical, funeral, and burial expenses incurred by the Estate in an amount to be proven at trial;

e. All allowable costs, expenses, and fees associated with this litigation; and

f. Such other and further relief as the Court deems just and proper.

107. Plaintiff's Form 95 written notice stated the damages for this cause of action to be $1,000,000.00 (one million dollars).

108. Plaintiff reserves the right to seek damages in excess of the amounted stated in her Form 95 if there is newly discovered evidence not reasonably discoverable at the time her claim was presented to the agency or where intervening facts justify a higher award.

## VI. SECOND CAUSE OF ACTION: NEGLIGENCE RESULTING IN WRONGFUL DEATH

*Brought on behalf of Mr. Ruch's next of kin for their personal damages*

109. At all material times, the driver of the Veterans Transportation Service van was a federal employee employed by the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs.

110. At all material times, the driver's negligent acts and omissions took place while he/she was acting within the scope of his/her office or employment, under circumstances where the United States, if a private person, would be liable under Nebraska law.

111. As the driver's employer, the United States is liable for the negligent acts or omissions of the driver under the doctrine of respondeat superior.

112. At all material times, the driver was engaged in a special relationship as a common carrier with passengers who were veteran occupants, including Mr. Ruch.

113. In addition to the common carrier-passenger relationship, the driver entered into a custodial relationship by voluntarily taking custody of passengers for whom he/she had a superior ability to protect, and such custodial passengers included Mr. Ruch.

114. These special relationships imposed upon the driver a duty of reasonable care with regard to risks that arise within the scope of those special relationships.

115. This duty of care includes a duty to exercise reasonable care under the circumstances and a duty not to create a risk of harm.

116. Irrespective of these special relationships, the driver owed Mr. Ruch a general duty of care under the common law to exercise reasonable care under the circumstances and to not create a risk of harm to passengers utilizing the Veteran Transportation Service, including Mr. Ruch.

117. The driver breached his/her duty of care to Mr. Ruch in one or more of the following ways:

> i. Negligently failing to abide by or ensure compliance with existing policies and procedures relating to the transportation of wheelchair users;
> j. Negligently failing to ensure compliance with Directive 1695;
> k. Negligently failing to comply with Directive 1695;
> l. Negligently failing to use vans equipped with safety mechanisms, including but not limited to an automatic barrier when the loading ramp is down;
> m. Negligently failing to keep Mr. Ruch secured in the van while unloading and assisting another passenger;
> n. Negligently failing to supervise Mr. Ruch while he was in the van;
> o. Negligently escorting another passenger into the facility while an unattended and unsecured passenger remained in the van; and/or
> p. Negligently failing to otherwise act reasonably under the circumstances and/or negligently creating a risk of harm to veteran passengers, including Mr. Ruch.

118. The driver's negligent acts or omissions caused Mr. Ruch to fall from the van and hit his head, which ultimately and proximately caused Mr. Ruch's death for which the United States is liable to Mr. Ruch's next of kin under Nebraska's wrongful death laws.

119. In addition to duty of care owed to Mr. Ruch by the driver, other officers and/or employees of the Veterans Transportation Service, the Omaha VA, and/or the

Department of Veterans Affairs owed Mr. Ruch a duty to act with reasonable care under the circumstances and to not create a risk of harm to him.

120. Other employees and/or officers of the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs breached the applicable duty of care to Mr. Ruch in one or more of the following ways:

n. Negligently failing to develop, adopt, implement, or enforce internal or local standards, policies, and procedures to ensure the safe transportation of wheelchair users;

o. Negligently failing to develop, adopt, implement, or enforce policies or procedures to safely attend to multiple vehicle occupants;

p. Negligently failing to abide by or ensure compliance with existing policies and procedures relating to the transportation of wheelchair users;

q. Negligently failing to ensure compliance with Directive 1695;

r. Negligently failing to comply with Directive 1695;

s. Negligently failing to use vans equipped with safety mechanisms, including but not limited to an automatic barrier when the loading ramp is down;

t. Negligently failing to train Veterans Transportation Service drivers, including the driver of the van from which Mr. Ruch fell;

u. Negligently failing to supervise Veterans Transportation Service drivers, including the driver of the van from which Mr. Ruch fell;

v. Negligently failing to organize the accident site;

w. Negligently failing to seek eye-witness accounts;

x. Negligently failing to train staff to triage and stabilize patients pending community paramedic response;

y. Negligently failing to triage and stabilize patients pending community paramedic response;

z. Negligently failing to train, ensure, or provide a well-coordinated response to emergencies occurring on its campus; and/or

aa. Negligently failing to otherwise act reasonably under all the circumstances and/or negligently creating a risk of harm to veteran passengers, including Mr. Ruch.

121. The violations of applicable administrative rules and regulations, such as Directive 1695 and/or other public or private safety regulations, constitute negligence per se.

122. The negligent acts or omissions of the officers and/or employees of the Veterans Transportation Service, the Omaha VA, and/or the Department of Veterans Affairs caused Mr. Ruch to fall from the van and hit his head, which ultimately and proximately caused Mr. Ruch's death for which the United States is liable to Mr. Ruch's next of kin under Nebraska's wrongful death laws.

123. Specifically, Defendant is liable to Mr. Ruch's eligible and participating next of kin for the following damages:

   a. Past and future loss of support, society, comfort, and companionship of Mr. Ruch in an amount to be proven at trial;
   b. Past and future monetary value of the services Mr. Ruch would have contributed to the next of kin had Mr. Ruch lived;
   c. All allowable costs, expenses, and fees associated with this litigation; and
   d. Such other and further relief as the Court deems just and proper.

124. Plaintiff's Form 95 written notice states the damages for this cause of action to be $10,000,000.00 (ten million dollars).

125. Plaintiff reserves the right to seek damages in excess of the amounted stated in her Form 95 if there is newly discovered evidence not reasonably discoverable at the time her claim was presented to the agency or where intervening facts justify a higher award.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court enter judgment against Defendant in an amount supported by the allegations of this Complaint and the evidence at trial, as follows:

1. Judgment against Defendant for general damages in an amount consistent with the allegations contained herein and to be proven at trial;

2. Judgment against Defendant for hedonic damages in an amount consistent with the allegations contained herein and to be proven at trial;

3. Judgment against Defendant for special damages in an amount consistent with the allegations contained herein and to be proven at trial; and

4. Judgment for costs, interests, and such other and further relief as this Court deems just and equitable.

Respectfully submitted this 14th day of April 2022,

/s/ Emily S. Madden
Emily S. Madden
Bar Number: Wyoming 6-3970
Attorney for Plaintiff
THE SPENCE LAW FIRM, LLC
232 East 2nd Street, Suite 101
Casper, Wyoming 82601
Telephone: (307) 733-7290
Fax: (307) 733-5248 (fax)
Email: madden@spencelawyers.com